UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| THINC MANAGEMENT, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:19-cv-04133-SLD-JEH |
| CITY OF ROCK ISLAND, | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant City of Rock Island's ("Defendant" or "the City") Motion for Partial Summary Judgment, ECF No. 20. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

On March 2, 1998, Defendant entered into an agreement ("MetroSite Agreement") with MetroSite Management, LLC ("MetroSite"). Under this agreement, MetroSite would provide consulting and marketing services to Defendant regarding Defendant's leasing of space on its water towers and other facilities to telecommunications carriers. In return, MetroSite would receive a portion of the revenues arising from any lease or license of these facilities. The MetroSite Agreement terminated on February 28, 2003.

Plaintiff THinc Management, LLC ("Plaintiff" or "THinc") is MetroSite's assignee and successor in interest. On March 21, 2005, Plaintiff filed a lawsuit against Defendant in the

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the factual background of this case is drawn from Defendant's statement of undisputed material facts, Def.'s Mot. Partial Summ. J. 2–4, ECF No. 20; Plaintiff's statement of disputed material facts and additional material facts, Pl.'s Resp. 2–8, ECF No. 22; Defendant's reply to Plaintiff's additional material facts, Def.'s Reply 1–7, ECF No. 23; and exhibits to the filings, in particular the Settlement Agreement, Def.'s Mot. Partial Summ. J. Ex. B, ECF No. 20-1; Pl.'s Resp. Ex. B, ECF No. 22-2.

Central District of Illinois, alleging, in part, that Defendant had breached the MetroSite Agreement by failing to make payments to Plaintiff for twelve leases or licenses as required under that agreement. A Settlement Agreement was reached on December 12, 2006, pursuant to which Defendant was to 1) transmit to Plaintiff two one-time payments to settle claims for amounts due through December 2006 and 2) pay Plaintiff, beginning January 10, 2007 and continuing on a monthly basis, a percentage of the revenues collected for each of the twelve leases or licenses. Payments would be made in accordance with the MetroSite Agreement's fee schedule, which listed the percentage fees to which Plaintiff was entitled at the time of the Settlement Agreement for each lease or license and any future adjustments to the percentage fees.

In addition to terms for payment, the Settlement Agreement set forth the conditions under which Defendant's obligation to pay the percentage fees would conclude. This responsibility would "cease for any particular lease or license . . . upon the occurrence of" a lease termination event ("Termination Event"), which, as relevant here, includes when "[t]he lease or license expires naturally at the conclusion of all renewal terms provided in the lease or license." Settlement Agreement ¶ 6, Def.'s Mot. Partial Summ. J. Ex. B, ECF No. 20-1. The Settlement Agreement also establishes a firm "Outside End Date" for each lease or license after which Defendant would not be obligated to pay Plaintiff any further fees, "regardless of whether the particular lease(s) or license(s) has been amended or modified hereafter to provide for a term extending beyond the Outside End Date." *Id*. ¶ 7.

Built into the Settlement Agreement is a series of procedures Defendant must follow in the event of a Termination Event. Within fifteen days of the occurrence of a Termination Event, Defendant must provide Plaintiff with written notice of the event and provide copies of all

documentation or correspondence between Defendant and the carrier giving rise to the Termination Event. Defendant further must deliver to Plaintiff within ninety days of a Termination Event copies of any new agreements entered into between Defendant and the carrier to lease that facility. Beyond its obligations in the event of a termination, Defendant cannot "materially amend or modify any of the Twelve Leases to the extent the amendment or modification will result in a financial detriment to [Plaintiff] without [Plaintiff's] written consent"; the Settlement Agreement prevents Defendant from "tak[ing] . . . action in collusion with any carrier which would have the effect of defeating the intent of" the Settlement Agreement. *Id.* ¶ 10.

Plaintiff brought the current suit on July 5, 2019.[2] The complaint contains three counts. In the first count, Plaintiff alleges that Defendant breached the Settlement Agreement by failing to pay Plaintiff the full amount due under the terms of the Settlement Agreement. Compl. ¶¶ 21–26, ECF No. 1. In the second, it alleges that Defendant failed to comply with the Settlement Agreement and requests that the Court order the enforcement of the Settlement Agreement against Defendant and enter a preliminary injunction prohibiting Defendant from distributing the portion of the funds to which Plaintiff is entitled pursuant to the Settlement Agreement. *Id.* ¶¶ 27–29. In the third count, Plaintiff requests that the Court enter a declaratory judgment in Plaintiff's favor on Count Two finding that the Court has jurisdiction to enforce the terms of the Settlement Agreement, that Plaintiff has fully complied with the terms and conditions of the Settlement Agreement, and that Plaintiff is entitled to a percentage of the revenues from the

---

[2] The Court has jurisdiction over this action on the basis of diversity. *See* Compl. ¶¶ 6, 7, 25 (asserting that the parties are domiciled in different states and reasonably alleging that Plaintiff seeks damages in excess of $75,000). Diversity is a proper basis on which a federal court may have subject matter jurisdiction over an action to enforce a settlement agreement. *See Jones v. Ass'n of Flight Attendants-CWA*, 778 F.3d 571, 573 (7th Cir. 2015) ("Suits for breach of contract, including those to enforce ordinary settlements, arise under state law. They cannot be adjudicated in federal court unless there is an independent basis of subject-matter jurisdiction, such as diversity.").

leases pursuant to the Settlement Agreement, during their initial terms and subsequent renewals. *Id*. ¶¶ 30–33. The instant motion followed.

## DISCUSSION

### I. Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where one party has properly moved for summary judgment, the nonmoving party must respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Parties may not merely refer to their own pleadings, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or show "that the materials cited do not establish the absence or presence of a genuine dispute," Fed R. Civ. P. 56(c)(1).[3] The court is to "constru[e] the record in the light most favorable to the nonmovant," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant*, 870 F.3d at 568. However, the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).

---

[3] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II. Analysis

Defendant moves for summary judgment regarding six of the twelve leases or licenses that are the subject of the Settlement Agreement (identified as agreements 2167, 6526, 6698, 6699, 6700, and 6701), asking the Court to find that Defendant's obligation to pay fees on these leases or licenses ended when they "expired by their own terms."[4] Def.'s Mot. Partial Summ. J. 1, 6. Defendant argues that the Settlement Agreement only requires it to pay percentage fees during the terms explicitly mentioned in the lease or license agreements in effect when the Settlement Agreement was made, and when those terms were over, so too were its payment obligations. *Id*. at 6. Any subsequent agreements for additional terms, Defendant contends, are "entirely new contracts" with no connection to the Settlement Agreement. *Id*.

Plaintiff counters that these "new" contracts are, rather, extensions or modifications of the original contracts, preserving Defendant's obligation to pay. Pl.'s Resp. 1–2, ECF No. 22. Further, the Settlement Agreement institutes certain procedural safeguards which, Plaintiff argues, Defendant failed to follow. *Id*. at 11. Thus, it opposes a judgment that Defendant's duty to pay percentage fees on the six leases or licenses has been extinguished. *Id*.

The Settlement Agreement and each of the six leases or licenses that are the subject of this motion are to be construed as contracts and, as such, are governed by contract law. *See, e.g.*, *Melton v. Frigidaire*, 805 N.E.2d 322, 340 (Ill. App. Ct. 2004) ("A settlement between parties to a lawsuit is a contract, enforceable as a contract."); *Midland Mgmt. Co. v. Helgason*, 630 N.E.2d 836, 839 (Ill. 1994) ("A lease . . . . is essentially a type of contract, and, as such, it is governed by

---

[4] Defendant's motion for summary judgment regarding these six leases or licenses does not appear to distinguish between Plaintiff's claims. Rather, it moves for a judgment as to a single issue affecting all of Plaintiff's claims: when its obligations to pay percentage fees under these six leases or licenses terminated. Defendant acknowledges that it was in arrears on its payments to Plaintiff but disagrees with Plaintiff as to the extent to which it was in arrears. Def.'s Reply 7, ECF No. 23. The instant motion does not address the amount of potential outstanding payments but instead focuses on the date after which Plaintiff is or was no longer entitled to receive payments from Defendant.

the rules which govern contracts generally." (citations omitted)). In Illinois, "the interpretation of a contract presents a question of law that is decided by the court."[5] *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). A court's principle task in interpreting a contract is "to discern the parties' intent from the contract language." *Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 528–29 (Ill. 2008). "A contract must be construed as a whole, viewing each provision in light of the other provisions." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). Where the words are "clear and unambiguous, they must be given their plain, ordinary and popular meaning"; the contractual language is ambiguous when it is "susceptible to more than one meaning." *Id*. If language is ambiguous, a court may "consider extrinsic evidence to determine the parties' intent." *Id*. The court should not "interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Id*.

When the resolution of a claim turns on a contract's terms, "summary judgment is appropriate only if there are no genuine issues of material fact surrounding the interpretation of that contract." *Rickher*, 535 F.3d at 664. In contrast, "there is a disputed fact precluding summary judgment when the material writing contains an ambiguity which requires admission of extrinsic evidence." *Loyola Acad. v. S & S Roof Maint., Inc.*, 586 N.E.2d 1211, 1215 (Ill. 1992). However, if "extrinsic facts are uncontroverted, the trial court must determine the [ambiguous] contract's meaning as a matter of law." *Hernandez v. Schittek*, 713 N.E.2d 203, 210 (Ill. App. Ct. 1999).

---

[5] Neither party disputes that Illinois law governs. *See* Def.'s Mot. Partial Summ. J. 5 n.1 ("The substantive law of Illinois applies to this case, as each agreement contains a provision selecting Illinois law . . . ."); Pl.'s Resp. 8–10 (citing to Illinois decisions for contract interpretation precedent).

To resolve this motion, the Court must review each of the six leases or licenses at issue in this case. Defendant has attached to its motion the initial agreement for the lease identified as agreement 2167 ("Lease 2167"), Water Tower Lease 2167, Def.'s Mot. Partial Summ. J. Ex. C, ECF No. 20-2; the initial agreement for the license identified as agreement 6526 ("License 6526"), Site License Agreement 6526, Def.'s Mot. Partial Summ. J. Ex. D, ECF No. 20-3; the initial agreement for the license identified as agreement 6698 ("License 6698"), Site License Agreement 6698, Def.'s Mot. Partial Summ. J. Ex. E, ECF No. 20-4 at 3–17; the subsequent agreement to extend License 6698, Agreement to Extend 6698, Def.'s Mot. Partial Summ. J. Ex. E, ECF No. 20-4 at 1–2; the initial agreement for the license identified as agreement 6699 ("License 6699), Site License Agreement 6699, Def.'s Mot. Partial Summ. J. Ex. F, ECF No. 20-5 at 3–17; the subsequent agreement to extend License 6699, Agreement to Extend 6699, Def.'s Mot. Partial Summ. J. Ex. F, ECF No. 20-5 at 1–2; the initial agreement for the license identified as agreement 6700 ("License 6700"), Site License Agreement 6700, Def.'s Mot. Partial Summ. J. Ex. G, ECF No. 20-6 at 3–18; the subsequent agreement to extend License 6700, Agreement to Extend 6700, Def.'s Mot. Partial Summ. J. Ex. G, ECF No. 20-6 at 1–2; the initial agreement for the license identified as agreement 6701 ("License 6701"), Site License Agreement 6701, Def.'s Mot. Partial Summ. J. Ex. H, ECF No. 20-7 at 3–17; and the subsequent agreement to extend License 6701, Agreement to Extend 6701, Def.'s Mot. Partial Summ. J. Ex. H, ECF No. 20-7 at 1–2. Each lease or license will be examined in turn.

   a. **Lease 2167**

Lease 2167 went into effect on June 16, 1998. Water Tower Lease 2167 1. The initial term of the lease was five years, beginning on the earlier of the date on which the tenant commenced installation or construction or July 1, 1998. *Id.* ¶ 2(A). The agreement granted the

tenant the right to extend the lease for three additional five-year terms with a rent increase of twenty percent for each new term but otherwise identical terms and conditions; unless the tenant gave written notice of an intention not to renew the lease, the lease would "automatically renew for each successive Renewal Term." *Id.* ¶ 2(D). Absent any such notice of non-renewal, then, the lease would be automatically renewed until 2018. The Settlement Agreement established an Outside End Date of July 1, 2018 for Lease 2167. Settlement Agreement ¶ 7.

Defendant contends that it is no longer obligated to pay percentage fees to Plaintiff for Lease 2167 because the lease "has expired both by its terms and by operation of the settlement agreement's 'Outside End Date.'" Def.'s Mot. Partial Summ. J. 6. Plaintiff opposes summary judgment, arguing that there is still a factual question as to whether Lease 2167 has been extended beyond the four terms discussed above, which, if true, might require Defendant to continue payments. Pl.'s Resp. 3. In support of this argument, Plaintiff points to Defendant's statement in its motion that "[a]fter the initial term and the renewal terms, [Lease 2167] was the subject of a later and separate Agreement to Extend." *Id.* (citing Def.'s Mot. Partial Summ. J. 2–3). As Defendant has not produced to Plaintiff this alleged agreement to extend, Plaintiff asserts, the Court cannot make a decision at this point as to whether Defendant's obligations as to Lease 2167 are at an end. *See id.*

Even if there was a later agreement to extend Lease 2167, it does not affect the Court's decision on this issue. The initial and three renewal terms provided for in the 1998 agreement carried the lease through 2018, where it then met the barrier created by the Settlement Agreement: the Outside End Date. The Settlement Agreement is clear and unambiguous on the fact that "in no event" is Defendant required to pay Plaintiff any percentage fees for revenues collected from any lease or license after its Outside End Date, "regardless of whether the

particular lease(s) or license(s) has been amended or modified hereafter to provide for a term extending beyond the Outside End Date." Settlement Agreement ¶ 7. For Lease 2167, that date is July 1, 2018. *Id.* Any potential extension past July 1, 2018 is irrelevant, just as any failure to provide notice to Plaintiff of the end of Defendant's obligations to make payments would be irrelevant—notice is only required after the occurrence of a Termination Event, not the Outside End Date, *id.* ¶ 8.[6]

As any obligation on Defendant's part to pay further percentage fees to Plaintiff for Lease 2167 was extinguished at least as of the Outside End Date of July 1, 2018, Defendant's motion for summary judgment regarding the duration of its obligations to Plaintiff for this lease is granted.

    **b. License 6526**

The initial agreement for License 6526 was made on February 16, 2001. Site License Agreement 6526 1. The initial term was set for five years, to begin on the earlier of the date commercial operations commenced or February 20, 2001. *Id.* ¶ 2(a). The licensee was granted the option to extend the license for an additional five-year term on the same terms and conditions (but with an increase in rent); the renewal would be automatic unless the licensee notified Defendant in writing of the licensee's intention not to renew the license. *Id.* ¶ 2(b). Thus, the initial and additional term would take the license to 2011. The Outside End Date for License 6526 was February 20, 2011. Settlement Agreement ¶ 7.

---

[6] Plaintiff does not appear to be arguing that the Settlement Agreement has been modified by any of the agreements to extend, and nothing in either party's briefing or exhibits suggests any such modification. Indeed, Plaintiff acknowledges that "[Defendant's] obligations to [Plaintiff] are governed by the MetroSite Agreement and/or the Settlement Agreement . . . not by the leases themselves." Pl.'s Resp. 10. The Settlement Agreement in its original form is the controlling document for Defendant's obligations to Plaintiff.

It is unclear from the briefing whether License 6526 was extended, renewed, or subject to an entirely new contract—Defendant first states that "[t]his license agreement has not been the subject of any extension agreement" but then later includes License 6526 on a list of contracts as to which "[n]ew lease or license agreements have been executed." Def.'s Mot. Partial Summ. J. 3, 6. Plaintiff notes that Defendant has failed to provide any evidentiary proof that License 6526 was not extended and argues that Defendant is not entitled to summary judgment for that reason. *See* Pl.'s Resp. 2–3. However, as with Lease 2167, the existence or absence of a further extension of the license is simply beside the point. The Outside End Date for License 6526 is February 20, 2011; even if the agreement was extended beyond that date, Plaintiff is not entitled to payment for revenues received by Defendant after that date. Thus, the Court grants Defendant's motion for summary judgment regarding the duration of its obligations to Plaintiff for License 6526.

### c.  License 6698

Defendant initially entered into an agreement with a carrier for License 6698 on April 5, 2001. Settlement Agreement ¶ 2. On June 17, 2003, the agreement was modified due to the initial carrier's acquisition by another company, and it was under this modified version of the agreement that Defendant would receive the revenue of which the Settlement Agreement awarded Plaintiff a percentage fee. *Id.* ¶ 3. According to the agreement, the initial term would begin ninety days after the modification date (June 17, 2003) and would last for five years. Site License Agreement 6698 3.[7] The license would be automatically renewed for two successive five-year terms upon the same terms and conditions (but with an increase in the license fee),

---

[7] Because Site License Agreement 6698 appears in the same attachment to Defendant's motion as the Agreement to Extend 6698, the page numbers used are those assigned by the CM/ECF system. This same numbering convention will be used for Licenses 6699, 6700, and 6701.

unless the licensee notified Defendant in writing of its intention not to renew the agreement. *Id*. The Outside End Date for License 6698 was June 17, 2018. Settlement Agreement ¶ 7.

In 2015, Defendant and the original licensee's successor in interest entered into an agreement to extend License 6698. Agreement to Extend 6698 1. This agreement noted that "[Defendant] and [the new] Licensee's predecessor in interest entered into . . . [Site License Agreement 6698] dated June 17, 2003" and that Defendant and the new licensee now agreed that "[c]ommencing September 24, 2018, the License shall be automatically renewed for three (3) successive five (5) year renewal terms . . . upon the same terms and conditions as the License," with an increase in the renewal fee each term, unless the licensee notifies Defendant in writing of its intention not to renew. *Id*. The agreement stated that "[i]t is the intent of the parties that except for the provisions of this Agreement, all other terms of the License shall remain in full force and effect throughout the Initial Term and all Renewal Term(s) of the License." *Id*.

Defendant argues that License 6698 "has expired by its terms" and that the extension has no connection to its obligations under the Settlement Agreement, Def.'s Mot. Partial Summ. J. 6–7; Plaintiff believes that, as the license has been extended and there has been no Termination Event, Defendant remains obligated to pay through 2033, Pl.'s Resp. 10–11. Once more, the Court need not delve into the effect of the agreement to extend the license on Defendant's obligations. The initial and two renewal terms provided for in the 2003 agreement carried the license up to the Outside End Date of June 17, 2018, and Plaintiff neither argues nor adduces any evidence that the Settlement Agreement has been modified. As such, Plaintiff has no interest in any revenue received by Defendant from License 6698 after June 17, 2018. Defendant's summary judgment motion is granted regarding the duration of its obligations to Plaintiff for License 6698.

### d. Licenses 6699, 6700, and 6701[8]

Defendant initially entered into an agreement with a carrier as to License 6699 on April 11, 2001, as to License 6700 on March 1, 2001, and as to License 6701 on March 1, 2001. Settlement Agreement ¶ 2. On June 17, 2003, all three agreements were individually modified due to the initial carrier's acquisition, and it was these modified versions that were in effect at the time that the Settlement Agreement was entered. *Id.* ¶ 3. Under the modified agreements, the initial terms of each license would begin ninety days after the modification date (June 17, 2003) and would last five years. Site License Agreement 6699 3; Site License Agreement 6700 3; Site License Agreement 6701 3. The terms would be automatically renewed for two successive five-year renewal terms upon the same terms and conditions, apart from an increase in the license fee, unless the licensee notified Defendant in writing of its intention not to renew the agreement. Site License Agreement 6699 3; Site License Agreement 6700 3; Site License Agreement 6701 3. The Settlement Agreement set the Outside End Date for License 6699 as April 11, 2026, for License 6700 as March 1, 2026, and for License 6701 as March 1, 2026. Settlement Agreement ¶ 7.

In 2015, Defendant and the original licensee for each license's successor in interest entered into agreements to extend each license, establishing that "[c]ommencing September 24, 2018, the License shall be automatically renewed for three (3) successive five (5) year renewal terms . . . , upon the same terms and conditions as the License," except for an increase in the license fee, unless the new licensee provided written notice of its intention not to renew. Agreement to Extend 6699 1; Agreement to Extend 6700 1; Agreement to Extend 6701 1. Each agreement stated that "[i]t is the intent of the parties that except for the provisions of this

---

[8] Because the Court's analysis of Licenses 6699, 6700, and 6701 is largely the same, they will be addressed together.

Agreement, all other terms of the License shall remain in full force and effect throughout the Initial Term and all Renewal Term(s) of the License." Agreement to Extend 6699 1; Agreement to Extend 6700 1; Agreement to Extend 6701 1.

In contrast to the three leases or licenses discussed previously, the Outside End Dates for Licenses 6699, 6700, and 6701 have not yet passed. Thus, it is now necessary to address the effect of the 2015 agreements on Defendant's obligations under the Settlement Agreement.

The first question the Court must address is whether the Settlement Agreement allows for the possibility of additional extensions to the leases or licenses beyond the terms explicitly provided for in the agreements in effect at the time the Settlement Agreement was reached. Pointing to ¶ 6(a) of the Settlement Agreement, Defendant argues that is only responsible for payments based on "leases or licenses in existence at the time of the settlement agreement"—which, for Licenses 6699, 6700, and 6701, only provided for terms through 2018—and that therefore its "obligation to pay the fees . . . ended when they expired by their own terms." Def.'s Mot. Partial Summ. J. 1–2, 6. Settlement Agreement ¶ 6(a) states that a Termination Event occurs when "[t]he lease or license expires naturally at the conclusion of all renewal terms provided in the lease or license." Plaintiff responds that such an outcome would defeat the very purpose of the Settlement Agreement by allowing Defendant to evade its payment obligations. Pl.'s Resp. 11.

Whether Defendant is entitled to summary judgment regarding these licenses depends on the Court's interpretation of the phrase "all renewal terms provided in the lease or license," Settlement Agreement ¶ 6(a). In evaluating the contract, the Court is to construe it as a whole, "viewing each provision in light of the other provisions"; it cannot "interpret a contract in a manner that would nullify or render provisions meaningless." *Thompson*, 948 N.E.2d at 47.

13

Looking to the language of ¶ 6(a) of the Settlement Agreement, the Court must therefore interpret it in a way that is consistent with the rest of the agreement. At the time the Settlement Agreement was made, agreements as to Licenses 6699, 6700, and 6701 were already in place; indeed, the Settlement Agreement explicitly refers to these agreements and notes the initial and renewal terms provided by the 2003 modifications. Settlement Agreement ¶ 3. Thus, the Settlement Agreement was written with the knowledge that the existing agreements only provided for terms through 2018. Yet the Settlement Agreement also establishes an Outside End Date for each of the three licenses in 2026, *id*. at ¶ 7, apparently acknowledging the possibility that Defendant could be responsible for paying percentage fees through that year. Should the Court interpret ¶ 6(a) as limiting Defendant's payment obligations to the terms explicitly provided for in the 2003 agreements—ending in 2018—then there would be no purpose to setting an Outside End Date in 2026, "render[ing that] provision[] meaningless" in violation of the principles of contract interpretation, *Thompson*, 948 N.E.2d at 47. Thus, the Settlement Agreement necessarily must have anticipated that the terms for Licenses 6699, 6700, and 6701 might be extended beyond 2018 and that Defendant could be required to pay for revenue received during such as-yet-unestablished renewal terms.

Having determined that the Settlement Agreement allows for the possibility that Defendant could be responsible for payments during additional terms, the Court will now address Defendant's argument that because the 2015 agreements are new agreements rather than extensions, it is no longer obligated to pay. Defendant contends that because these "new agreements did not exist when the settlement agreement was executed" and "the leases or licenses in existence at the time of the settlement agreement expired naturally by their own terms," "plaintiff is not entitled to receive monies under the new agreements." Def.'s Mot.

Partial Summ. J. 6. In support of its argument, Defendant cites to various cases discussing the difference between contract extensions and renewals. *See id*. at 5–7; Def.'s Reply 7–9, ECF No. 23. However, the majority of these cases are focused on categorizing or dating the contracts for the purpose of figuring out whether the contracts fell under statutes rather than examining whether renewals of the contract for additional terms were covered under the terms of a private agreement such as the Settlement Agreement. *See Barrett v. Lawrence*, 442 N.E.2d 599, 601–02 (Ill. App. Ct. 1982) (holding that a contract to push back the date of the conveyance of a condominium was a new contract rather than an extension where the issue was whether the contract fell under a statute with limitations on the amount of time a contract could be pending); *Bitronics Sales Co. v. Microsemiconductor Corp*., 610 F. Supp. 550, 556–57 (D. Minn. 1985) (examining whether a contract fell within a statute when the original contract predated the effective date of the statute but the contract was amended after that date); *McKay Nissan, Ltd. v. Nissan Motor Corp*., 764 F. Supp. 1318, 1319–320 (N.D. Ill. 1991) (discussing whether the Illinois Motor Vehicle Franchise Act applied to a franchise agreement where the old agreement predated the Act but its amended versions did not); *J.B. Stein & Co. v. Sandberg*, 419 N.E.2d 652, 655–56 (Ill. App. Ct. 1981) (determining that whether a statute applied depended on whether the "plaintiff's option to extend or renew is considered to be a continuation of the original lease"). The lone case cited by Defendant involving an examination of whether an extension of a contract was covered by a private agreement is *Kozonis v. Tamburello*, 69 N.E.3d 372 (Ill. App. Ct. 2016), in which the court found that a guaranty did not remain in effect after the original lease whose payments it guaranteed was extended because the extension of the lease "was not contemplated by the original lease" and thus "was simply not within the terms of the guaranty." *Id*. at 376.

The question here is not how to characterize the 2015 agreements to extend in the abstract but whether the Settlement Agreement meant to encompass them.  As discussed above, the terms of the Settlement Agreement make clear that the agreement did contemplate the possibility of additional terms for Licenses 6699, 6700, and 6701 and ensured that Defendant would still be under an obligation to pay Plaintiff percentage fees should those same licenses be extended up to the Outside End Date.  Thus, the possibility of these additional terms was covered by the Settlement Agreement.  The Agreements to Extend mention the 2003 agreements, refer to the additional terms provided therein as "renewal terms," and state that "[i]t is the intent of the parties that . . . all other terms of the License shall remain in full force and effect," indicating that the parties were not creating a new license but were rather carrying on with additional terms of Licenses 6699, 6700, and 6701.  Agreement to Extend 6699 1; Agreement to Extend 6700 1; Agreement to Extend 6701 1.  Defendant has not satisfied its burden of showing the Court that it is entitled to judgment as a matter of law that its obligation to pay percentage fees on Licenses 6699, 6700, and 6701 ended in 2018.  Thus, the motion for summary judgment is denied regarding these three licenses.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment, ECF No. 20, is GRANTED IN PART and DENIED IN PART.  Defendant's obligation to pay percentage fees to Plaintiff ended at least as of July 1, 2018 for Lease 2167, as of February 20, 2011 for License 6526, and as of June 17, 2018 for License 6698.  The issue of whether Defendant's obligation to pay percentage fees on Licenses 6699, 6700, and 6701 has been terminated remains unresolved.  Also unresolved is the issue of whether Defendant has failed to make any of its

required payments.  This case is set for a final pretrial conference on January 27, 2021 at 10:00 AM.  Proposed pretrial orders are due by January 20, 2021.

Entered this 14th day of January, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
